IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES PRESNELL,                  )
                                 )
            Plaintiff,           )
                                 )
    v.                           )    1:20CV234
                                 )
SNAP-ON SECURECORP., INC.,       )
                                 )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is a Motion to Dismiss filed by Defendant Snap-On Securecorp., Inc. ("Snap-On" or "Defendant"), (Doc. 7), and a Motion to Strike, (Doc. 14). Plaintiff James Presnell ("Plaintiff" or "Presnell") has opposed both motions. (Docs. 12, 17.)

Plaintiff filed a Complaint, (Doc. 4), alleging that the failure of Defendant's product – a hammer – caused him serious injury. Defendant filed a Motion to Dismiss, (Doc. 7), and Plaintiff filed a late response, (Doc. 12). Defendant replied, (Doc. 16). Defendant then filed a Motion to Strike Plaintiff's response. (Doc. 14.) This case is ripe for consideration.

I. **ANALYSIS**

   A. **Motion to Strike**

Under Fed. R. Civ. P. 6, a court may extend the time deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). After Defendant filed its Motion to Dismiss on March 18, 2020, (Doc. 7), Plaintiff had until April 8, 2020, to file a timely response. See LR 7.3(f). Without notice to the court or to opposing counsel, Plaintiff failed to file a response within this deadline. Plaintiff instead filed a response twenty days after the deadline had passed, on April 28, 2020. (Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp. (Doc. 12).) Plaintiff now cites both the COVID-19 pandemic and technical problems as the reasons for this improper delay. (Doc. 17 at 2.) However, while this delay is unacceptable and an extension of time should have been sought, this court will not strike the response under LR 7.3(k). Plaintiff's neglect can be excused given the extenuating circumstances and the fact that no substantial hardship has been demonstrably created by the delay. Defendant ultimately agrees that "it would seem appropriate under the circumstances to consider Plaintiff's Response." (Doc. 18 at 2.)

This court will decline to strike Plaintiff's response, and as a result, Defendant's Motion to Dismiss is not uncontested. This court will therefore evaluate the merits of the Motion to Dismiss.

**B.   Defendant's Motion to Dismiss**

The complaint was filed in state court and subsequently removed to this court. (Doc. 1.) Jurisdiction is based upon 28 U.S.C. § 1332, diversity of citizenship. (Id. at 2.) The Federal Rules of Civil Procedure apply to a civil action removed from state court. Fed. R. Civ. P. 81(c)(1).

> A federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure "answer[s] the same question" as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act. Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 559 U.S. 393, 398–99 (2010) (majority opinion) (citing Hanna v. Plumer, 380 U.S. 460, 463–64 (1965)).

Platinum Press, Inc. v. Douros-Hawk, Civil Action No. 3:18-CV-00458-GCM, 2018 WL 6435331, at *2 (W.D.N.C. Dec. 7, 2018). Although Plaintiff's response to Defendant's motion to dismiss recognizes the familiar Twombly standard described hereinafter, (see Pl.'s Resp. (Doc. 12) at 3), Plaintiff also appears to rely upon the now abrogated "no set of facts" standard recognized in Conley v. Gibson, 355 U.S. 41, 45-46 (1957). (See id. at 2 n.1.) That standard has been abrogated, Bell Atl. Corp. v. Twombly,

-3-

550 U.S. 544, 563 (2007), and replaced by a requirement that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As a result, Plaintiff's reliance upon a state case addressing the state standard for granting a motion to dismiss is not applicable here. (See Pl.'s Resp. (Doc. 12) at 3.) To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556-57). When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. Id. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted).

Nevertheless, sufficient factual allegations must "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. A

-4-

court cannot "ignore a clear failure in the pleadings to allege any facts which set forth a claim." Estate of Williams-Moore, 335 F. Supp. 2d at 646. Consequently, even given the deferential standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

The complaint alleges few facts: Plaintiff purchased a Snap-On Ball Peen Hammer from Snap-On Tools. (Complaint ("Compl.") (Doc. 4) ¶ 4.) Plaintiff alleges that Defendant is "in the business of designing, assembling, promoting, marketing, manufacturing, testing, distributing, supplying, and/or selling" hammers. (Id. ¶ 3.) Plaintiff identifies the hammer as a "Ball Peen Soft Grip Dead Blow Hammer," (id. ¶ 4), but what that is, how it is used, what it is used for, and how Plaintiff was using it are not described in the Complaint. The Complaint alleges only two relevant plausible facts: Plaintiff purchased the hammer and the head broke while he was using it for some

-5-

purpose.[1] As Plaintiff was using the hammer, "[a] metal chunk of the Hammer head broke off as he struck an object and became lodged in the Plaintiff's right forearm." (Id. ¶ 5.) This caused Plaintiff to sustain "serious and permanent injuries to his arm." (Id. ¶ 15.) The Complaint does not allege what Plaintiff was hitting with the hammer, or how he was using the hammer. The Complaint does not allege any theory of how or why the hammer was defective. While Plaintiff frames his Complaint as containing two counts under N.C. Gen. Stat. 99B-1, he sets out no less than eighteen distinction theories of liability, none of which are accompanied by facts tailored to their elements. (See Compl. (Doc. 4).)

1. **Factual Insufficiency**

Plaintiff presents a wide variety of potential allegations, most of which are alleged in a conclusory manner without a single supporting factual allegation. For example, Plaintiff

---

[1] A ball-peen hammer is defined as "a hammer having a hemispherical peen at one end of its head," as distinct from, for example, a claw hammer. Ball-peen hammer, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/ball-peen%20hammer. The Snap-On Tools website has a description of "Application Information" describing intended uses of what appears to be the hammer at issue. https://shop.snapon.com/product/Dead-Blow-Ball-Peen/32-oz-Ball-Peen-Soft-Grip-Dead-Blow-Hammer-(Red)/HBBD32 (last visited Mar. 30, 2021). This fact is not considered in this motion, but it is only offered to explain why this court points out these particular factual issues.

-6-

alleges Defendant was "failing to incorporate an alternative and safer design," yet does not allege an alternative design that would have been preferable, or even reference a single fact about the hammer's existing design. (Compl. (Doc. 4) ¶ 14.) Plaintiff alleges Defendant was "failing to properly . . . test the product" without any factual allegation about the existence or extent of Defendant's testing. (Id.) Plaintiff alleges Defendant was "failing to adequately warn users, employers, and others" and was "negligently and carelessly designing, manufacturing, distributing, supplying and/or selling the product without adequate instructions," yet does not explain whether any warning was present, and if so, how it was inadequate. (Id.) Nor does Plaintiff allege what instructions, if any, were included. Plaintiff also claims that Defendant was "failing to design. . . the product in accordance with applicable government and industry statutes," yet does not even bother to allege which "applicable government and industry statutes" the hammer failed to meet. (Id.)

For the claims centering around negligence, including all of Count 1, Plaintiff is required to plausibly allege facts to meet each of the elements of a negligence claim. "As with other negligence actions, the essential elements of a products liability action based upon negligence are (1) duty, (2) breach,

-7-

(3) causation, and (4) damages." Crews v. W.A. Brown & Son, Inc., 106 N.C. App. 324, 329, 416 S.E.2d 924, 928 (1992). Plaintiff's injury alone is not enough to establish negligence. "Ordinarily, no inference of negligence arises from the mere fact of accident or injury." Jolley v. Gen. Motors Corp., 55 N.C. App. 383, 385, 285 S.E.2d 301, 303 (1982). And Plaintiff has provided no facts to indicate what duty Defendant owed or how Defendant's particular actions with respect to the hammer led to Plaintiff's injury.

Alleging negligent design requires alleging what was wrong with the design. "Plausible allegations that [Defendant] negligently breached a duty to design the [product] would necessarily include allegations regarding what the flaw in the [product's] design was that rendered the [product] unreasonably unsafe, thereby pleading how [Defendant's] design amounted to negligence." Markel Am. Ins. Co. v. XDS, LLC, Case No. 7:20-cv-00075-M, 2020 WL 4938435, at *4 n.5 (E.D.N.C. Aug. 24, 2020). The court in Markel found that the plaintiff had merely alleged that the defendant built a product which later failed, and therefore the case could not proceed to discovery, as the complaint was entirely "based upon a post-hoc-ergo-propter-hoc theory of causation, which requires an unreasonable inference that courts uniformly reject." Id. at *5. Where the court is

-8-

"left entirely to speculate as to what [the defendant] might have done or not done while building the [product] that Plaintiff believes breached a duty," the claim at issue is too speculative to pass the pleading stage. Id. at *4. Plaintiff in this case has not even alleged with particularity what problem caused the hammer to break. See Fields v. Jobar Int'l, Inc., Civil Action No. 3:14CV50-HEH, 2014 WL 1513289, at *3 (E.D. Va. Apr. 16, 2014) ("It is impossible for this Court to determine whether or not Plaintiff states a plausible claim for negligent design without some disclosure in the pleading of the alleged defect or deficiency . . . ."); Corwin v. Connecticut Valley Arms, Inc., 74 F. Supp. 3d 883, 889 (N.D. Ill. 2014) ("Plaintiff's complaint presents no factual allegations that detail how the bullet was defective in causing increased barrel pressures — whether because of the bullet's physical properties, its inherent design, or otherwise. An assertion that the bullet was 'defective,' without any factual elaboration, is insufficient . . . .") (footnote omitted).

The same logic applies in manufacturing defect claims as in design defect claims. For example, in Williams v. Smith & Nephew, Inc., the plaintiffs' complaint stated that the product at issue had a "different hardness in metal and a variance in other metallurgical properties that caused or allowed it to

-9-

break down sooner" than it should have, without including information about "the specific material composition and hardness requirements of the metal used." 123 F. Supp. 3d 733, 747 (D. Md. 2015). The court found this claim was "too speculative" and the plaintiffs "must add sufficiently specific factual allegations to make their claim plausible." Id. Among Plaintiff's conclusory allegations is the contention that Defendant failed "to incorporate an alternative and safer design and/or other guards or devices." (Compl. (Doc. 4) ¶ 14.) Yet Plaintiff provides no evidence, or even suggestion, of what alternative hammer design might have been safer or more appropriate.

Of course, absent further discovery, Plaintiff cannot be expected to have amassed a litany of factual details about the hammer's design and construction. Yet the details missing from Plaintiff's complaint are not merely those that must be unearthed through discovery. For example, he alleges claims such as inadequate warnings and instructions without alleging what, if any, warnings or instructions he received. (Id.) He alleges Defendant has failed to comply with government or industry standards without even indicating which standards he might be implicating. (Id.)

-10-

### 2. Lack of Particularity Regarding Legal Claims

Moreover, Plaintiff's complaint also fails to clearly allege what kind of legal claims will be pursued against Defendant. As Defendant asks:

> Is Plaintiff alleging a design defect? Is he alleging a manufacturing defect? Is he alleging a defect in the construction or assembly of the hammer? Does Plaintiff allege that the warnings provided were insufficient or that the product contained no warnings at all? Does Plaintiff contend the subject hammer failed to comply with certain government and industry standards? If so, which standards? Based on the face of the Complaint, the answers to these most basic questions are totally unclear.

(Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Br.") (Doc. 8) at 7.) Plaintiff has not specified whether he believes this was a design defect, a manufacturing defect, or some other problem – in fact, Plaintiff has not even identified whether Defendant is the manufacturer, designer, or merely the distributor of the product. Plaintiff's brief notes that it is "likely" there was a failure to warn, highlighting the speculative nature of Plaintiff's complaint. (Pl.'s Resp. (Doc. 12) at 4.) Moreover, Plaintiff agrees outright that he does not know whether the hammer was "negligently and defectively designed" or "negligently manufactured," and states his intention to use discovery as a time to "identify" whether any of these claims exist. (Id.)

-11-

A complaint cannot be a mere guess at the existence of some yet-unknown claims: "[a] complaint need not contain detailed factual recitations, but must provide the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" Allen v. Ted Wire, No. 1:19cv689, 2020 WL 4586722, at *3 (M.D.N.C. Aug. 10, 2020) (quoting Twombly, 550 U.S. at 555). Here, Plaintiff has provided no notice of what claim(s) he intends to pursue, and in fact admits he does not know what claim(s) he intends to pursue – merely alleging some unidentified problem exists at some point in the hammer's design, production, or distribution. He instead lists every imaginable claim in the hopes of finding something during discovery that might fit. Though Plaintiff is free to file a new complaint stating concrete theories of liability, he cannot use the legal process as a fishing expedition without any chosen theory of liability.

## II. CONCLUSION

For the reasons set forth herein, this court finds Defendant's Motion to Strike, (Doc. 14), should be denied, Defendant's Motion to Dismiss, (Doc. 7), should be granted, and Plaintiff's Complaint, (Doc. 4), be dismissed. Notwithstanding these findings, this court recognizes that some additional facts omitted from the Complaint are likely readily available to

-12-

Plaintiff. Those facts may have been omitted as a result of improper reliance upon a complaint filed pursuant to state court pleading rules. (See Pl.'s Resp. (Doc. 12) at 3.) As a result, this court will defer entry of a judgment on this order for a period of twenty days. Plaintiff may consider whether the complaint is subject to amendment. Leave to amend a complaint can be allowed, even after judgment is entered. Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). Generally, a party seeking leave to amend a complaint need not file a supporting brief under the local rules but "must state good cause" for the amendment. LR 7.3(j). However, here, if Plaintiff seeks leave to amend, this court will require Plaintiff to file a separate brief stating in detail good cause and why leave to amend should be allowed. If Plaintiff does not seek leave to amend, a judgment will be entered pursuant to this order.

**IT IS THEREFORE ORDERED** that Defendant's motion to dismiss, (Doc. 7), is **GRANTED** and that this matter is **DISMISSED**. This court defers entry of judgment on this Memorandum Opinion and Order for a period of 20 days to allow Plaintiff's consideration of the matter set forth herein. Should Plaintiff seek to amend the complaint, **IT IS ORDERED** that Plaintiff shall file a motion and supporting brief along with the proposed amended complaint

-13-

explaining good cause and reasons why the motion to amend should be allowed.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike, (Doc. 14), is **DENIED**.

This the 31st day of March, 2021.

_____
United States District Judge