IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


JAMES PRESNELL,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )          1:20CV234
                                   )
SNAP-ON SECURECORP, INC.,          )
                                   )
          Defendant.               )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

This matter comes before the court on the Motion to
Dismiss, (Doc. 24), filed by Defendant Snap-On Securecorp, Inc.
For the reasons stated herein, this court will grant the Motion
to Dismiss.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On a motion to dismiss, a court must "accept as true all of
the factual allegations contained in the complaint . . . ." Ray
v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). The facts, taken in
the light most favorable to Plaintiff, are as follows.

Plaintiff James Presnell ("Plaintiff") is a resident of
High Point, North Carolina. (Am. Compl. (Doc. 23) ¶ 1.)[1]

---

[1] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

Plaintiff has been a mechanic for over thirty years. (Id. ¶ 6.) Defendant Snap-On Securecorp, Inc. ("Defendant") sells hammers and similar products. (Id. ¶ 3.)

On November 9, 2018, Plaintiff purchased a Snap-On HBBD32 32oz. Ball Peen Soft Grip Dead Blow Hammer from Defendant at its store on Meadowview Road in Greensboro, North Carolina. (Id. ¶ 4.) Plaintiff regularly uses tools like ball peen hammers to work on vehicles as part of his job. (Id. ¶ 6.) Plaintiff used the ball peen hammer to knock a ball joint out of a pickup truck. (Id.) Defendant's website describes the intended uses of the ball-peen hammer as for "[r]ear drums, ball joints, tie rods and rounded end U-joints, track bar and rivets . . . ." (Id. ¶ 9.) Plaintiff wielded the hammer in his right hand and hit the ball joint with the flat ball side of the ball peen hammer. (Id. ¶ 7.)

When Plaintiff used the ball peen hammer to knock out the ball joint on the pickup truck, a metal piece from the head of the hammer broke off, (id. ¶ 11), and lodged itself in Plaintiff's left forearm, (id. ¶ 14). Plaintiff went to the hospital as well as an orthopedist for treatment. (Id. ¶¶ 15-16.) Plaintiff developed inflammation and pain after the incident. (Id. ¶ 16.)

The ball peen hammer's handle contains the following warning: "WEAR SAFETY GOGGLES OPERATOR AND BYSTANDERS. Do not

-2-

use chipped or mushroomed tools. This tool can be made to chip
if stuck against another tool or hard object, possibly resulting
in eye or other bodily injury." (Am. Compl. (Doc. 23) at Ex. A.)
Additionally, Defendant's website contains the following
warning:

## Warnings

  

For full warning information see CAT1500 pages W1-W4

(Am. Compl. (Doc. 23) at Ex. B.) Further explanation of these
warnings is also provided on Defendant's website:

**Hammers**

**⚠ WARNING**

- Hammers can cause flying chips.
- Chipped, mushroomed or cracked hammers can cause flying chips
- Glancing blows can cause flying chips
- Striking hard surface can cause flying chips
- Body hammers can chip or break if struck against hard surfaces

 **Wear safety goggles (user and bystanders). Do not use chipped, mushroomed or cracked hammers. Strike squarely and avoid glancing blows.**

 **Do not strike other hammers or similar hard surfaces. Do not use hammer for removing ball joints. use appropriate tool. Use body hammers only for striking automotive-type sheet metal; do not strike hard surfaces.** *Flying chips can cause injury.*

- Steel hammers can cause sparks during use

 **Do not use near flammable substance.** *Flammable substances can ignite causing injury.*

- COMPOTHANE® or urethane hammers can rupture or ignite if exposed to liquid oxygen

**Do not use *COMPOTHANE* or urethane hammers near liquid oxygen.** *Ruptured and/or ignited COMPOTHANE or urethane can cause injury.*

(Ex. 1 (Doc. 24-1) at 5.)

-3-

Additionally, Defendant's Terms and Conditions on its website

contain the following disclaimer language:

> **THE FOREGOING WARRANTY IS IN LIEU OF AND EXCLUDES ALL OTHER WARRANTIES NOT EXPRESSSLY SET FORTH HEREIN, WHETHER EXPRESS OR IMPLIED, BY OPERATION OF LAW OR OTHERWISE, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.** Descriptions of Product contained in this website are for the sole purpose of identifying Product and shall not be construed as an express warranty.

(Ex. 2 (Doc. 24-2) at 2.)[2]

---

[2] Plaintiff includes a 2021 screenshot and hyperlinks of Defendant's website in the Amended Complaint and also cites to the screenshots in support of the express warranties Plaintiff allegedly received in 2018. (See Am. Compl. (Doc. 23) ¶¶ 39, 41, 43, 52.) Despite Defendant's argument to the contrary, (Mem. in Supp. of Snap-On's Mot. to Dismiss ("Def.'s Br.") (Doc. 25) at 11-12), both parties have cited to the website and presented their arguments as though they agree that the current website information fairly reflects the information available in 2018. (See Def.'s Br. (Doc. 25) at 12-13, 17, 19 (citing Defendant's website for its Terms and Conditions).) Therefore, this court will analyze the issues as though the current website information is the same as that available in 2018. Additionally, although courts "generally do not consider extrinsic evidence when evaluating the sufficiency of a complaint," courts "may properly consider documents attached to a complaint or motion to dismiss "so long as they are integral to the complaint and authentic." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)). Plaintiff attached to his Amended Complaint a screenshot of Defendant's website, (Am. Compl. (Doc. 23) at Ex. B), and Defendant attached to its Motion to Dismiss additional screenshots of its website, (Ex. 1 (Doc. 24-1); Ex. 2 (Doc. 24-2)). These screenshots are integral to Plaintiff's complaint because the complaint incorporates by reference Defendant's website. (See, e.g., Am. Compl. (Doc. 23) ¶¶ 8-9, 39, 41, 43, 52.) Furthermore, neither party has challenged the documents' authenticity or objected to their consideration.

On January 31, 2020, Plaintiff filed his Complaint in Guilford County Superior Court. (Doc. 4.) Defendant removed to this court, (Doc. 1), and filed a Motion to Dismiss, (Doc. 7). This court granted that motion and gave Plaintiff leave to amend his Complaint. (Doc. 19.) Plaintiff moved to amend his Complaint, (Doc. 20), and this court granted that motion, (Doc. 22).

On May 13, 2021, Plaintiff filed his Amended Complaint. (Am. Compl. (Doc. 23).) Defendant moved to dismiss the Amended Complaint, (Doc. 24), and filed a brief in support, (Def.'s Br. (Doc. 25)). Plaintiff responded, (Pl.'s Br. in Resp. to Def.'s Mot. to Dismiss (Doc. 26)), and Defendant replied, (Reply in Supp. of Snap-On's Mot. to Dismiss (Doc. 27)). This matter is ripe for adjudication.

## II.  <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556-57).

-5-

When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. Id. Further, the complaint and facts alleged therein are viewed "in the light most favorable to the plaintiff." Burgess v. Goldstein, 997 F.3d 541, 562-63 (4th Cir. 2021) (citation omitted).

Nevertheless, the factual allegations must be sufficient to "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 680. A court cannot "ignore a clear failure in the pleadings to allege any facts which set forth a claim." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). Consequently, even given the deferential standard allocated to the pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

## III. ANALYSIS

Plaintiff brings four claims against Defendant: (1) failure to warn; (2) breach of express warranty; (3) breach of implied warranty of merchantability; and (4) breach of implied warranty of fitness for a particular purpose. (Am. Compl. (Doc. 23) ¶¶ 21-56.)

-6-

## A.    <u>Failure to Warn</u>

Defendant moves to dismiss Plaintiff's failure to warn claim because Plaintiff fails to plead facts plausibly alleging that a lack of warning caused Plaintiff's injuries, and because Plaintiff relies on Defendant's website which includes the warnings Plaintiff alleges he did not receive. (Def.'s Br. (Doc. 25) at 5-9.)

Under North Carolina law,

(a) No manufacturer or seller of a product shall be held liable in any product liability action for a claim based upon inadequate warning or instruction unless the claimant proves that the manufacturer or seller acted unreasonably in failing to provide such warning or instruction, that the failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought, and also proves one of the following:

> (1) At the time the product left the control of the manufacturer or seller, the product, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

> (2) After the product left the control of the manufacturer or seller, the manufacturer or seller became aware of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

N.C. Gen. Stat. § 99B-5(a); City of High Point v. Suez Treatment Sols. Inc., 485 F. Supp. 3d 608, 632 (M.D.N.C. 2020) (dismissing failure to warn claim). There is also a common law duty to warn: "a manufacturer is under an obligation to provide warnings of any dangers associated with the product's use 'sufficiently intelligible and prominent to reach and protect all those who may reasonably be expected to come into contact with [the product].'" Nicholson v. Am. Safety Util. Corp., 124 N.C. App. 59, 65, 476 S.E.2d 672, 676 (alteration in original) (quoting Ziglar v. E. I. Du Pont De Nemours & Co., 53 N.C. App. 147, 155, 280 S.E.2d 510, 516, disc. review denied, 304 N.C. 393, 285 S.E.2d 838 (1981)); accord Lightfoot v. Georgia-Pacific Wood Prods., LLC, 441 F. Supp. 3d 159, 170 (E.D.N.C. 2020).

> Liability arises for a supplier of a product, "if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

Lightfoot, 441 F. Supp. 3d at 170-71 (quoting Stegall v. Catawba Oil Co. of N.C., 260 N.C. 459, 464, 133 S.E.2d 138, 142 (1963)). Proximate causation is also required. Stegall, 260 N.C. at 464, 133 S.E.2d at 142.

-8-

This court finds Plaintiff fails to allege any facts that would allow this court to draw the reasonable inference that Defendant's failure to warn of the risk of harm from striking an object with the ball peen hammer caused Plaintiff harm. Plaintiff only alleges that "[t]he aforesaid incident and injury was caused by the negligent warning instruction of the Defendant . . . . Accordingly, Defendant is liable under the product liability statute . . . for all injuries and damages suffered by Plaintiff . . . ." (Am. Compl. (Doc. 23) ¶¶ 31-32.) Plaintiff's allegation that the warranty was deficient is not only conclusory but also contradicted by Plaintiff's factual allegations. Plaintiff alleges that the ball peen hammer contained a warning stating that the "tool can be made to chip . . . possibly resulting in . . . bodily injury." (Am. Compl. (Doc. 23) at Ex. A.) The warning encompasses the injury Plaintiff alleges he received. Even assuming the ball peen hammer was manufactured for use for ball joints and advertised as such, the warning appears to adequately reflect a risk of a chip and resulting bodily injury.

Furthermore, Plaintiff does not allege "that the warning label played any role in the decision" to use the ball peen hammer. See Burgess v. Pfizer, Inc., NO. 7:19-CV-235-FL, 2020 WL 1812010, at *5 (E.D.N.C. Apr. 9, 2020) (granting motion to dismiss failure to warn claim where the plaintiff failed to

-9-

allege that the defendant knew or should have known of the dangers not included in its warning label and failed to allege the warning label affected the plaintiff's decision to use the product). Finally, this court notes that Defendant's website, which Plaintiff heavily cites in his Amended Complaint, contains clear warnings that "Hammers can cause flying chips. . . . Striking hard surface can cause flying chips[.] Body hammers can chip or break if struck against hard surfaces[.]" (Ex. 1 (Doc. 24-1) at 5.) Because Plaintiff's allegations fail to "allow[] the court to draw the reasonable inference that the defendant is liable" and fail to demonstrate "more than a sheer possibility that [the] defendant has acted unlawfully," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556-57), the court will grant Defendant's motion to dismiss Plaintiff's failure to warn claim.

### B.  Express Warranty

Defendant moves to dismiss Plaintiff's breach of express warranty claim. (Def.'s Br. (Doc. 25) at 9-14). Under North Carolina law, the elements of a claim for breach of express warranty are "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and that this express warranty was breached by the defendant." Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Dirs. v. DJF Enters.,

Inc., 206 N.C. App. 152, 162, 697 S.E.2d 439, 447 (2010)
(internal quotation marks omitted) (quoting Hall v. T.L. Kemp
Jewlry, Inc., 71 N.C. App. 101, 104, 322 S.E.2d 7, 10 (1984));
see also Ford Motor Credit Co. v. McBride, 257 N.C. App. 590,
596, 811 S.E.2d 640, 646 (2018). To recover damages for a
breach, a plaintiff must show that the breach proximately caused
the loss sustained. See Rose v. Epley Motor Sales, 288 N.C. 53,
60, 215 S.E.2d 573, 577 (1975); City of Charlotte v. Skidmore,
Owings & Merrill, 103 N.C. App. 667, 679, 407 S.E.2d 571, 579
(1991).

### 1. **Plaintiff's Prima Facie Case**

As to the first element of a breach of express warranty
claim, this court finds Plaintiff alleges Defendant made two
express warranties about the ball peen hammer. First, Defendant
expressly warranted on its website that "the Snap-on brand
conveys a badge of professionalism, delivering confidence to
those performing work of consequence where second best is not an
option." (Am. Compl. (Doc. 23) ¶ 39.) Second, Defendant
expressly warranted on its website a "Lifetime Warranty, Non-
repairable, Warrantied for Materials and Workmanship/for as long
as purchaser owns the Tools." (Id. ¶ 41.)

Defendant argues that Plaintiff fails to identify specific
statements made by Defendant to Plaintiff and implies that
language "via [Defendant's] website" is insufficient to create

-11-

an express warranty. (Def.'s Br. (Doc. 25) at 10 (emphasis omitted).) Defendant's argument that statements on Defendant's website cannot form the basis of Plaintiff's breach of express warranty claim fails. It is well-settled that language on a defendant's website can constitute an express warranty. See Green v. Wing Enters., Inc., Civil Action No. RDB-14-1913, 2015 WL 7351478, at *3 (D. Md. Nov. 20, 2015) (noting the plaintiff visited the defendant's website to read more information about the product); Christie v. Hartley Const., Inc., 367 N.C. 534, 535, 766 S.E.2d 283, 285 (2014) (noting the plaintiffs "conducted research" on the defendants' product and were "[s]atisfied with [the defendants'] representations and . . . warranty provisions stated on [their] website").

Defendant further argues that the word "warranty" "does not constitute an express warranty specific to the subject hammer" but cites no authority for that proposition. (Def.'s Br. (Doc. 25) at 10.) "[N]either the formal words of an express warranty nor the seller's intent to afford such a warranty is necessary to fulfill the requirements of the statute." Pake v. Byrd, 55 N.C. App. 551, 552, 286 S.E.2d 588, 589 (1982) (citing N.C. Gen. Stat. § 25-2-313(2)). Plaintiff alleges the hammer "conveys a badge of professionalism delivering confidence to those performing work of consequence where second best is not an option" and that the hammer has a "Lifetime Warranty, Non-

-12-

repairable, Warrantied for Materials and Workmanship/for as long as purchaser owns the Tools." (Am. Compl. (Doc. 23) ¶¶ 39, 41.) Therefore, this court finds the first element of a breach of express warranty claim is met.

However, this court finds the second element of a breach of express warranty claim is not sufficiently pled. Plaintiff has not alleged he relied on Defendant's express statements prior to purchasing the hammer. Taking the allegations in the Amended Complaint as true, which this court is required to do at the motion to dismiss stage, Iqbal, 556 U.S. at 678, Plaintiff alleges that "[i]n using the Hammer, [he] relied upon Defendant's express statement on the Snap-on Tools Website," (Am. Compl. (Doc. 23) ¶ 43). This court infers from this allegation that Plaintiff read Defendant's statements prior to using the hammer in light of the specific phrase "[i]n using the hammer." However, it is an unreasonable inference—one contrary to the specific language—to infer from this allegation that Plaintiff relied on Defendant's statements prior to purchasing the hammer. This is especially true considering Plaintiff's allegation that he "is a trade mechanic that works on vehicles and automobiles," "has owned 2 of this exact same type of hammer and used this exact same type of ball peen hammer for over 10 years," and purchased this hammer "because he thought they were of high quality and would help get his work done." (Id. ¶ 42.)

-13-

"Where the buyer relies on his own skill and judgment, thereby essentially disclaiming any warranty, the seller's statements cannot be viewed as the basis of the bargain." Pake, 55 N.C. App. at 553, 286 S.E.2d at 590; Prichard Enters., Inc. v. Adkins, 858 F. Supp. 2d 576, 585 (E.D.N.C. 2012) (citations omitted). In an express warranty claim, North Carolina courts recognize that "[t]he single most important decision to make is whether the seller's statements were so regarded by the buyer as part of his reason for purchasing the goods," Pake, 55 N.C. App. at 552, 286 S.E.2d at 589 (emphasis added) (internal quotation marks omitted) (quoting 3 Williston on Sales § 17-4 at 12 (4th ed. 1974)). Plaintiff fails to allege he relied on Defendant's statements in purchasing the hammer. As a result, this court finds Plaintiff has failed to adequately plead facts to plausibly show Plaintiff relied upon, and Defendant subsequently breached, the terms of an express warranty which was part of the reason Plaintiff purchased the hammer.

Plaintiff's factual allegations are not sufficient to "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570. This court will therefore grant Defendant's motion to dismiss Plaintiff's breach of express warranty claim.

-14-

## C.    Implied Warranty of Merchantability

Defendant moves to dismiss Plaintiff's breach of implied warranty of merchantability claim because Plaintiff fails to allege facts suggesting "the hammer was unmerchantable at the time of sale or that Plaintiff purchased the hammer new," and because Defendant's website—on which Plaintiff relies—disclaims any warranties of merchantability.

North Carolina law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.C. Gen. Stat. § 25-2-314(1). That statute further provides that "[g]oods to be merchantable must be . . . fit for the ordinary purposes for which such goods are used." Id. § 25-2-314(2)(c). To state a claim for a breach of implied warranty, a plaintiff must demonstrate

> (1) that the goods in question were subject to an
> implied warranty of merchantability; (2) that the
> goods were defective at the time of the sale and as
> such did not comply with the warranty; (3) that the
> resulting injury was due to the defective nature of
> the goods; and (4) that damages were suffered.

Williams v. O'Charley's, Inc., 221 N.C. App. 390, 393, 728 S.E.2d 19, 21 (2012); see Goodman v. Wenco Foods, Inc., 333 N.C. 1, 10, 423 S.E.2d 444, 447-48 (1992); Cockerham v. Ward, 44 N.C. App. 615, 624-25, 262 S.E.2d 651, 658, disc. review denied, 300 N.C. 195, 269 S.E.2d 622 (1980).

-15-

Plaintiff's claim for breach of the implied warranty of merchantability fails for two reasons. First, Plaintiff has failed to sufficiently plead his claim. Plaintiff alleges that "Defendant[] expressly and impliedly warranted that the aforementioned Hammer was of merchantable quality, fit, safe and in the proper condition for the ordinary use for which it was designed and used." (Am. Compl. (Doc. 23) ¶ 49.) Plaintiff further alleges that "[t]he Hammer was . . . not merchantable" because it was "defective and unreasonably dangerous," "rupture[d], br[oken], disintegrat[ed] and/or otherwise fail[ed] during use," "malfunction[ed] during normal and foreseeable use," and "shatter[ed] and/or fail[ed] while being used." (Id. ¶ 53.) However, the Amended Complaint lacks any allegations that the ball peen hammer was defective at the time of sale. See Gaston v. PBI Gordon Corp., No. 1:13CV891, 2014 WL 4114324, at *5 (M.D.N.C. Aug. 20, 2014) (granting motion to dismiss the plaintiff's breach of implied warranty of merchantability claim where "Plaintiff has not alleged any facts that Defendant's [product] was defective at the time of sale"). Similarly, the Amended Complaint lacks any allegations as to why the defect occurred. See McDonald Bros., Inc. v. Tinder Wholesale, LLC, 395 F. Supp. 2d 255, 265 (M.D.N.C. 2005) (denying motion to dismiss breach of implied warranty of

-16-

merchantability claim where the complaint alleged the reason for the defect).

Moreover, this court finds Defendant's website contains a conspicuous disclaimer of the implied warranty of merchantability.

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

N.C. Gen. Stat. § 25-2-316(2). The disclaimer here expressly mentions merchantability, is in writing, and "excludes all other warranties not expressly set forth herein, whether express or implied, by operation of law or otherwise, including but not limited to any implied warranties of merchantability or fitness for a particular purpose." (Ex. 2 (Doc. 24-2) at 2 (upper case omitted).)

The question that remains is only whether the disclaimer on Defendant's website was conspicuous. N.C. Gen. Stat. § 25-1-201 defines "conspicuous" as that which is "so written . . . that a reasonable person against [whom] it is to operate ought to have noticed it." § 25-1-201(b)(10). Whether a term is "conspicuous" is a decision for the court. See Billings v. Joseph Harris Co., 27 N.C. App. 689, 694, 220 S.E.2d 361, 365 (1975). In Billings,

-17-

for example, the North Carolina Court of Appeals found on summary judgment that a disclaimer was conspicuous when it was set off from other provisions, in bold, capital letters, on a one-page form signed by the plaintiff. Id. at 693, 220 S.E.2d at 365. Other North Carolina Court of Appeals decisions have found a warranty on a product's label that was in darker, larger typeface to be conspicuous. See, e.g., Tyson v. Ciba-Geigy Corp., 82 N.C. App. 626, 631, 347 S.E.2d 473, 477 (1986).

In Lindsay v. Ninchino America, Inc., this court considered a Disclaimer of Warranty clause and declined to find it conspicuous. 202 F. Supp. 3d 524, 531-32 (M.D.N.C. 2016). "[T]he location of the disclaimers, notably their separation from both the express warranty and the instructions relevant to Plaintiffs' use of the product, the length of the Instruction Booklet, and the lack of anything in the Complaint showing Plaintiffs read or were even aware of the disclaimers" prevented this court from finding "that the disclaimer was so conspicuous such that a reasonable person ought to have had notice of it." Id. at 532. Accordingly, this court declined to grant to the motion to dismiss. Id.; cf. Auto-Owners, Inc. v. Komatsu Am. Corp., No. 1:06CV827, 2007 WL 1652286, at *3 (M.D.N.C. June 6, 2007) (granting motion to dismiss because "[t]he relevant language is sufficiently conspicuous" where it was in all caps and bolded).

-18-

This case differs in several ways from <u>Lindsay</u>. First, Defendant's disclaimers are provided in the same section as the "Warranty – Professional Use for Products" section, (Ex. 2 (Doc. 24-2) at 2), unlike the disclaimers in <u>Lindsay</u>, which were separated from the express warranty, 202 F. Supp. 3d at 532. Second, the Terms and Conditions are a short document consisting of just two pages, (Ex. 2 (Doc. 24-2)), whereas in <u>Lindsay</u>, the disclaimers were located within a forty-page booklet, 202 F. Supp. 3d at 532. Third, in <u>Lindsay</u> the complaint lacked any allegation "showing that Plaintiffs read or were even aware of the disclaimers," 202 F. Supp. 3d at 532, but in this case, Plaintiff references Defendant's website throughout his Amended Complaint, which indicates Plaintiff was apparently aware of Defendant's website. (<u>See generally</u> Am. Compl. (Doc. 23) at Ex. B.) Finally, Plaintiff "has owned 2 of this exact same type of hammer," (<u>Id.</u> ¶ 52), which indicates he has a history of dealing with Defendant such that he should have been aware of the disclaimers, unlike the plaintiffs in <u>Lindsay</u> who had no such history, 202 F. Supp. 3d at 532.

Here, the webpage containing the warranty and disclaimer at issue has been entered into the record.[3] The disclaimer appears on the first page of Defendant's Terms and Conditions, directly

---

[3] <u>See</u> <u>supra</u> note 2.

following Defendant's warranty for professional use. (Ex. 2 (Doc. 24-2) at 2.) The disclaimer is bold, all caps, and in a larger typeface than the surrounding text, as contemplated by N.C. Gen. Stat. § 25-1-201(b)(10).

Taking the facts in the Amended Complaint in the light most favorable to Plaintiff, Plaintiff's failure to adequately plead his claim, combined with the disclaimer language on Defendant's website, leads this court to determine that Plaintiff's breach of implied warranty of merchantability claim should be dismissed. Accordingly, this court will grant Defendant's motion to dismiss Plaintiff's breach of implied warranty of merchantability claim.

D.    **Implied Warranty of Fitness for a Particular Purpose**

Defendant moves to dismiss Plaintiff's breach of implied warranty of fitness for a particular purpose claim, arguing there are no allegations that Plaintiff conveyed his intended use to Defendant, that Plaintiff has alleged he used the ball peen hammer for its ordinary use, and that Defendant disclaimed an implied warranty of fitness for a particular purpose. (Def.'s Br. (Doc. 25) at 15-17.)

When a "seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied

-20-

warranty that the goods shall be fit for such purpose." N.C. Gen. Stat. § 25-2-315 (emphasis added).

This court finds Plaintiff's breach of implied warranty of fitness for a particular purpose claim should be dismissed. First, Plaintiff has failed to plead his claim. "Although knowledge of Plaintiff's intended purpose for the goods can be implied by the relationship of the parties and their respective businesses, Defendant's knowledge of Plaintiff's reliance cannot." McDonald Bros., 395 F. Supp. 2d at 266. Because Plaintiff is a mechanic, and Defendant is a seller of hammers and other products Plaintiff uses in his business, "it is difficult to infer the kind of disparate knowledge of the goods at issue that is typically associated with the implied warranty of fitness for a particular purpose." Id. For example, "[t]here are no allegations Defendant had any more intimate knowledge of [ball peen hammers] than Plaintiff from which the court can infer Defendant knew Plaintiff was relying on its skill or judgment." Id. Plaintiff has not alleged Defendant knew of Plaintiff's reliance on Defendant. Thus, Plaintiff has failed to properly plead this claim.

Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose also fails as a matter of law.

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is

-21-

> peculiar to the nature of his business whereas the
> ordinary purposes for which goods are used are those
> envisaged in the concept of merchantability and go to
> uses which are customarily made of the goods in
> question. For example, shoes are generally used for
> the purpose of walking upon ordinary ground, but a
> seller may know that a particular pair was selected to
> be used for climbing mountains.

N.C. Gen. Stat. § 25-2-315 cmt. 2. "Ordinary use of a product forecloses recovery under the implied warranty of fitness for a particular purpose." McDonald Bros., 395 F. Supp. 2d at 266.

In this case, Plaintiff's intended use of the ball peen hammer was the ball peen hammer's ordinary use. Plaintiff alleges the ball peen hammer was not fit for the particular purpose of using the hammer to strike a ball joint. (Am. Compl. (Doc. 23) ¶ 51.) Plaintiff alleges

> that this type of Hammer is to be used for heavy duty
> work that includes swinging the hammer to hit a ball
> joint. . . . Defendants . . . knew or reasonably
> should have known that Plaintiff was purchasing said
> Hammer with the particular purpose to use the Hammer,
> for the intended purpose, as stated by Defendant's own
> website to strike a ball joint . . . .

(Id. ¶¶ 50-51.) Plaintiff did not buy the hammer for a particular purpose but for its "intended" purpose, (id. ¶ 51), which forecloses Plaintiff from recovering as a matter of law on a breach of implied warranty for a particular purpose claim. Accordingly, this court will grant Defendant's motion to dismiss

Plaintiff's breach of implied warranty of fitness for a particular purpose claim.[4]

## IV.  CONCLUSION

For the foregoing reasons, this court finds Defendant's Motion to Dismiss, (Doc. 24), should be granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. 24), is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE.**

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 1st day of February, 2022.

_____
United States District Judge

---

[4] Plaintiff's claim also fails because Defendant disclaimed any warranty of fitness for a particular purpose. See discussion supra Part III.C.